

1  Laurence D. King (SBN 206423)
   lking@kaplanfox.com
2  KAPLAN FOX & KILSHEIMER LLP
   350 Sansome Street, Ste 400
3  San Francisco, CA 94104
   Telephone: 415-772-4700
4  Facsimile:  415-772-4707

5  Marc M. Seltzer (SBN 54534)
   mseltzer@susmangodfrey.com
6  Susman Godfrey L.L.P.
   1901 Avenue of the Stars, Suite 950
7  Los Angeles, CA 90067-6029
   Telephone:  310-789-3100
8  Facsimile: 310-789-3150

**FILED**

MAR 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**E-filing**

9

*Attorneys for Plaintiff*

10

[Additional counsel on signature page.]

11

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14  ————————————————————————    Case No. CV 08 1462

15  BRUCE HUT, individually and on behalf
    of all others similarly situated,

16                                Plaintiff,    **CLASS ACTION COMPLAINT FOR
                                                VIOLATIONS OF THE FEDERAL
17              v.                              ANTITRUST LAWS**

18  AIR NEW ZEALAND, ALL NIPPON
    AIRWAYS, CATHAY PACIFIC           **DEMAND FOR JURY TRIAL**
19  AIRWAYS, CHINA AIRLINES, EVA
    AIRWAYS, JAPAN AIRLINES
20  INTERNATIONAL, MALAYSIA
    AIRLINES, QANTAS AIRWAYS
21  LIMITED, SINGAPORE AIRLINES,
    THAI AIRWAYS, and UNITED
22  AIRLINES,

23                                Defendants.
    ————————————————————————

24

25

26

27

28

————————————————————————
CLASS ACTION COMPLAINT

1      Plaintiff, on behalf of himself and all others similarly situated, hereby brings

2    this action for treble damages and injunctive relief under the federal antitrust laws of

3    the United States, Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1

4    ("Sherman Act") and Sections 4 and 26 of the Clayton Antitrust Act of 1914, 15

5    U.S.C. §§ 15, 26 ("Clayton Act") against Defendants. Plaintiff complains and allege

6    upon information and belief, except as to those paragraphs applicable to the named

7    plaintiff, which is based on personal knowledge, as follows:

8                              **NATURE OF THE ACTION**

9      1.      This action arises from a global conspiracy among certain airlines to fix,

10   raise, maintain, and/or stabilize prices for long haul passenger transpacific flights to

11   and from the United States ("Trans-Pacific Passenger Air Transportation"), and for

12   fixed fuel surcharges on this transportation. Fuel surcharges are fees charged to

13   passengers by airlines purportedly to compensate the airlines for increased fuel costs.

14     2.      At all relevant times herein, Defendants were airlines that conducted and

15   sold Trans-Pacific Passenger Air Transportation, and charged fixed fuel surcharges

16   with respect to that transportation, to airline passengers in the United States and

17   throughout the world.

18     3.      As further alleged herein, during the Class Period, Defendants agreed,

19   combined, and/or conspired with each other to fix, raise, maintain, and/or stabilize the

20   prices of Trans-Pacific Passenger Air Transportation and fuel surcharges thereon. As

21   a result of Defendants' unlawful conduct and conspiracy, plaintiff and the other

22   members of the Class paid artificially high prices for Trans-Pacific Passenger Air

23   Transportation and have been damaged accordingly.

24     4.      Plaintiff, on behalf of all persons and entities that purchased Trans-

25   Pacific Passenger Air Transportation, to and from the United States, from any of the

26   Defendants and their co-conspirators or any predecessor, subsidiary, or affiliate of

27   each, at any time during the period from January 1, 2004 to August 2007 (the "Class

28

1

CLASS ACTION COMPLAINT

1 Period"), bring this action to recover treble damages and injunctive relief for
2 violations of the United States antitrust laws.

3 ## JURIDICTION AND VENUE

4 5. This complaint is brought under Sections 4 and 16 of the Clayton Act,
5 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and to recover treble damages and
6 the costs of this suit, including reasonable attorneys' fees, against Defendants for the
7 injuries sustained by plaintiff and the members of the Class by reason of Defendants'
8 violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

9 6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§
10 1331 and 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

11 7. This Court has *in personam* jurisdiction over each of the Defendants
12 because each was engaged in an illegal price-fixing scheme and conspiracy that was
13 directed at and/or caused injury to persons and entities residing in, located in, or
14 doing business in this district and throughout the United States.

15 8. Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28
16 U.S.C. § 1391(b)(c), and (d) because during the Class Period many of the Defendants
17 resided, transacted business, were found, or had agents in this district, and because a
18 substantial part of the events giving rise to plaintiff's claims occurred, and a
19 substantial portion of the affected trade and commerce described below has been
20 carried out, in this district.

21 ## PARTIES

22 ### A. Plaintiff

23 9. Bruce Hut, Plaintiff, resides in Hong Kong. Plaintiff Hut purchased
24 Trans-Pacific Passenger Air Transportation directly from one or more of the
25 Defendants, and paid fuel surcharges with respect to that transportation. Plaintiff Hut
26 has suffered injury as a result of the antitrust violations alleged herein.

27

28

2

CLASS ACTION COMPLAINT

1

**B.    Defendants**

2    10.    Defendant Air New Zealand is a New Zealand company with its

3  principal place of business at Quay Tower, 29 Customs St. West, Auckland, 1020,

4  New Zealand.  Air New Zealand conducts Trans-Pacific Passenger Air

5  Transportation throughout the world, including into the U.S.

6    11.    Defendant All Nippon Airways is a Japanese company with its principal

7  place of business at Shidome-City Center, 1-5-2, Higashi-Shimbashi, Minato-ku,

8  Tokyo 105-7133, Japan.  All Nippon Airways conducts Trans-Pacific Passenger Air

9  Transportation throughout the world, including into the U.S.

10    12.    Defendant Cathay Pacific Airways is a Hong Kong-based company with

11  its principal place of business at 9 Connaught Road, Central Swirel Housepox Box 1

12  GPO, Hong Kong K3.  Cathay Pacific Airways conducts Trans-Pacific Passenger Air

13  Transportation throughout the world, including direct transpacific flights into the

14  United States.

15    13.    Defendant China Airlines is a Taiwanese company with its principal

16  place of business at 131 Naking E. Rd., Section 3, Taipei, Taiwan.  China Airlines

17  conducts Trans-Pacific Passenger Air Transportation throughout the world, including

18  direct transpacific flights into the United States.

19    14.    Defendant EVA Airways is a Taiwanese company with its principal

20  place of business at 16F-1, No. 207, Fusing Road, Taoyuan City, Taoyuuan County,

21  Taiwan.  EVA Airways conducts Trans-Pacific Passenger Air Transportation

22  throughout the world, including direct transpacific flights into the United States.

23    15.    Defendant Japan Airlines International is a Japanese company with its

24  principal place of business at 4-11, Higashi-Shinagawa 2-chrome, Shinagawa Ku,

25  Tokyo 140-8605, Japan.  Japan Airlines International conducts Trans-Pacific

26  Passenger Air Transportation throughout the world, including into the United States.

27

28

3

CLASS ACTION COMPLAINT

16.    Defendant Malaysia Airlines is a Malaysian corporation with its principal place of business at MAS Complex A, Sultan Abdul Azia Shah Airport, 47200 Suband, Selangor Darui Ehsan, Malaysia. Malaysia Airlines conducts Trans-Pacific Passenger Air Transportation throughout the world, including into the United States.

17.    Defendant Qantas Airways Limited ("Qantas") is an Australia company with its principal place of business at 203 Coward Street, Qantas Centre, Mascot NSW 2020 C3. Qantas conducts Trans-Pacific Passenger Air Transportation throughout the world, including into the United States.

18.    Defendant Singapore Airlines is a Singapore company with its principal place of business at Airline House, 25 Airline Road, 819829 Singapore. Singapore Airlines conducts Trans-Pacific Passenger Air Transportation throughout the world, including direct transpacific flights into the United States.

19.    Defendant Thai Airways is a Thailand company with its principal place of business at 89 Vibhavadi-Rangsit Road, Bangkok, Thailand 10900. Thai Airways conducts Trans-Pacific Passenger Air Transportation throughout the world, including direct transpacific flights into the United States.

20.    Defendant United Airlines is a Delaware corporation with its principal place of business at 77 W. Wacker Drive, Chicago, IL 60601. United Airlines is one of the largest passenger airlines in the world with more than 3,600 flights a day to more than two hundred destinations. United Airlines conducts Trans-Pacific Passenger Air Transportation throughout the world, including into the United States.

## C.    Unnamed Co-Conspirators

22.    Various other individuals, firms and corporations, not named in this complaint have participated as co-conspirators in violations of law alleged herein, and have performed acts and made statements in furtherance of the alleged conspiracy.

4

CLASS ACTION COMPLAINT

1    **D.    Agents**

2    23.    Whenever in this complaint reference is made to any act, deed or
3    transaction of any corporation or entity, it means that the corporation engaged in the
4    act, deed or transaction by or through its officers, directors, agents, employees or
5    representatives while they were actively engaged in the management, direction,
6    control or transaction of its business or affairs.

7    <center>**TRADE AND COMMERCE**</center>

8    24.    Throughout the Class Period, there was a continuous and uninterrupted
9    flow of Trans-Pacific Passenger Air Transportation in international commerce
10    throughout the United States.  Defendants' unlawful activities, as described herein,
11    took place within the flow of commerce to Trans-Pacific Passenger Flight customers
12    throughout the world, and had a direct, substantial and reasonably foreseeable effect
13    upon interstate and international commerce in the United States.

14    <center>**PLAINTIFF AND THE CLASS SUFFERED INJURY THROUGH**</center>
15    <center>**COLLUSIVE PRICE INCREASES AND SURCHARGES**</center>

16    25.    As Defendants controlled a vast majority of the Trans-Pacific Passenger
17    Air Transportation services during the Class Period, Trans-Pacific Passenger Air
18    Transportation customers were unable to obtain Trans-Pacific Passenger Air
19    Transportation from other carriers during that period, because of the lack of
20    competition which allowed Defendants to reap enormous profits from the fuel
21    surcharges.

22    26.    In addition, fuel surcharges were often treated by Defendants and other
23    carriers similar to a tax or other surcharge, such as an airport facility charge or
24    government mandated September 11 security charge.  As such, fuel surcharges were
25    not always advertised as part of Defendants' fares, and were added on to the base fare
26    as part of the purchase transaction.

27

28

5

CLASS ACTION COMPLAINT

27. Because surcharges generally are designed to compensate for increased external costs, they should bear a relatively constant relationship to external costs levels. Thus, in a competitive market, fuel surcharges should rise and fall at relatively constant ratios to the associated jet fuel costs. Since their inception in 2004, the ratio of Defendants' fuel surcharges to its external costs has increased steadily. The fuel surcharge bore no relationship to the Defendants' actual fuel costs or fuel cost increases.

28. The ratio of Defendants' profits to external costs was therefore quite high due to the concerted implementation and maintenance of the agreed-upon Trans-Pacific Passenger Air Transportation and fuel surcharge price levels. So despite increased fuel costs during the Class Period, Defendants' fuel surcharges were actually responsible for substantial profit growth for Defendants.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action on his own behalf and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

> All individuals or entities (excluding governmental entities,
> Defendants, and their parents, predecessors, subsidiaries,
> affiliates, and their co-conspirators) who purchased Trans-Pacific
> Passenger Air Transportation, for long haul transpacific flights
> and who paid a fuel surcharge on their tickets from any of the
> Defendants and their co-conspirators or any predecessor,
> subsidiary, or affiliate of each, at any time during the period from
> January 1, 2004 to August 2007.

30. Because such information is in the exclusive control of Defendants, plaintiff does not know the exact number of Class members. Due to the nature of the trade and commerce involved, however, plaintiff believes that Class members number

6

CLASS ACTION COMPLAINT

1 | at least in the thousands and are sufficiently numerous and geographically dispersed
2 | throughout the United States and the world so that joinder of all Class members is
3 | impracticable.

4 | 31.   There are questions of law or fact common to the Class, including:

5 |     a.   Whether Defendants engaged in a combination or conspiracy
6 |          among themselves to fix, raise, maintain, and/or stabilize the price
7 |          of Trans-Pacific Passenger Air Transportation and fuel surcharges;

8 |     b.   The duration of the conspiracy alleged in this complaint and the
9 |          nature and character of the acts performed by Defendants in
10 |          furtherance of the conspiracy;

11 |     c.   Whether the alleged conspiracy violated Section 1 of the Sherman
12 |          Act;

13 |     d.   Whether the conduct of Defendants, as alleged in this complaint,
14 |          caused injury to the businesses or property of plaintiff and the
15 |          other members of the Class;

16 |     e.   The effect of Defendants' conspiracy on the Trans-Pacific
17 |          Passenger Air Transportation and fuel surcharge charged in the
18 |          United States and throughout the world during the Class Period;
19 |          and

20 |     f.   The appropriate measure of damages sustained by plaintiff and
21 |          other members of the Class.

22 | 32.   Plaintiff is a member of the Class. Plaintiff's claims are typical of the
23 | claims of the Class members. Plaintiff will fairly and adequately protect the interests
24 | of the Class. Plaintiff purchased Trans-Pacific Passenger Air Transportation services
25 | from one or more Defendants, and his interests are coincident with and not
26 | antagonistic to those of other members of the Class. Plaintiff is represented by
27 |
28 |

7

CLASS ACTION COMPLAINT

1  counsel competent and experienced in the prosecution of antitrust and class action
2  litigation.

3      33.    Questions of law and fact common to the members of the Class
4  predominate over any questions affecting only individual members.

5      34.    A class action is superior to other methods for the fair and efficient
6  adjudication of this controversy. Treatment as a class action will permit a large
7  number of similarly situated persons to adjudicate their common claims in a single
8  forum simultaneously, efficiently, and without the duplication of effort and expense
9  that numerous individual actions would engender.

10      35.    Class treatment will also permit the adjudication of relatively small
11  claims by many Class members who otherwise could not afford to litigate an antitrust
12  claims such as is asserted in this complaint.

13      36.    This class action presents no difficulties in management that would
14  preclude maintenance as a class action. Finally, the Class is readily definable and is
15  one for which records of the names and addresses of the members of the Class exist
16  in the files of Defendants.

17                   **DEFENDANTS AND THE TRANS-PACIFIC PASSENGER AIR**
18                              **TRANSPORTATION MARKET**

19      37.    Each Defendant possesses significant market share on their routes of
20  travel. The principal competitors for the Defendants in the long haul Trans-Pacific
21  Passenger Air Transportation market are therefore one another.

22      38.    Trans-Pacific Passenger Air Transportation is a commodity product that
23  is fungible in the sense that Trans-Pacific Passenger Air Transportation provided by
24  any one airline is readily substitutable for the Trans-Pacific Passenger Air
25  Transportation provided by any other airline.

26
27
28

8

CLASS ACTION COMPLAINT

1    39.    Trans-Pacific Passenger Air Transportation is a homogenous service
2 sold by airlines, and purchased by plaintiff and the members of the Class primarily
3 based on price.

4    40.    The Trans-Pacific Passenger Air Transportation market in the United
5 States and worldwide is highly concentrated, and there exists substantial barriers to
6 entry in this market; both factors facilitate the implementation and maintenance of a
7 horizontal price-fixing conspiracy such as the one perpetrated by Defendants and
8 alleged herein.

9            **DEFENDANTS' CONCERTED FUEL SURCHARGES**

10    41.    Generally, surcharges are a feature of the global air transportation
11 market, in which airlines charge extra fees to their customers, above and beyond
12 basic flight rate charges, with the intent of defraying certain external costs of the
13 carriers.

14    42.    Beginning in 2004, Defendants agreed to act in concert with one another
15 in demanding fuel surcharges to defray fuel costs and agreeing when and how much
16 to increase the fuel surcharges to their Trans-Pacific Passenger Air Transportation
17 customers.

18    43.    Defendants were aware that their imposition of fuel surcharges would
19 not be successful if their supposed competitors did not join them; otherwise,
20 customers would be free to seek out lower prices. For this reason, Defendants
21 entered into agreements to raise fuel surcharges at the same times and in the same
22 amounts.

23    44.    But for Defendants' concerted conduct, Defendants would have been
24 unable to exact the fuel surcharges they charged their customers.

25    45.    The collusion of Japan Airlines International and All Nippon Airways
26 ("ANA") is representative of the behavior of the other Defendants. Japan Airlines
27
28

9

CLASS ACTION COMPLAINT

International and ANA agreed to raise and lower fares on nearly always the same dates and were in lockstep on surcharges for transpacific fares:

| | |
|---|---|
| June 8, 2004, ANA files a notice with the Japanese government to raise IATA international fares, in the wake of increased fuel prices, to and from Japan, effective July 1, 5% hike, exception North America economy Fares, but not business class. | June 8, 2004, Japan Airlines files a Notice with the Japanese government To raise international fares, in the wake of increased fuel prices, to and From Japan, effective July 1, 5% hike, exception North American economy fares, but not business class. |
| January 5, 2005, ANA announces it will add fuel surcharges on international fares on February 1. The surcharges for transpacific flights were 2,500 yen. | January 20, 2005, Japan Airlines announces it will add fuel surcharges on international passenger fares on February 1. The surcharges for transpacific flights were 2,500 yen. |
| June 3, 2005, Japan Airlines files a notice with the Japanese government to raise its international fuel surcharge effective July 1. | June 7, 2005, ANA files a notice with the Japanese government to raise its international fuel surcharge effective July 7. |
| January 16, 2006, Japan Airlines files a notice with the Japanese government to raise its international fuel surcharge effective March 1. | January 23, 2006, ANA files a notice with the Japanese government to raise its international fuel surcharge effective March 1. |

CLASS ACTION COMPLAINT

| | |
|---|---|
| August 17, 2006, Japan Airlines files a notice with the Japanese government to raise its international fuel surcharge, effective October 1, from 8,000 yen to 13,600 yen ($66 to $113). | August 31, 2006, ANA files a notice with the Japanese government to raise its international fuel surcharge, effective October 15, from 8,000 yen to 13,600 yen ($66 to $113). |
| November 16, 2006, Japan Airlines files a notice with the Japanese government to reduce the fuel surcharge on international passenger fares effective January 1, lowering the surcharge from 13,600 yen to 13,000 yen ($113 to $108). | November 16, 2006, ANA files a notice with the Japanese government to reduce the fuel surcharge on international passenger fares effective January 1, lowering the surcharge from 13,600 yen to 13,000 yen ($113 to $108). |
| March 19, 2007, Japan Airlines files a notice with the Japanese government to reduce the fuel surcharge on international passenger fares effective May 1, to 11,000 yen or $91. | March 20, 2007, ANA files a notice with the Japanese government to reduce the fuel surcharge on international passenger fares effective May 1, to 11,000 yen or $91. |
| May 15, 2007, Japan Airlines files a notice with the Japanese government to raise the fuel surcharge on international passenger fares effective July 1, from 11,000 yen or $91 to 12,000 yen or $100. | May 25, 2007, ANA files a notice with the Japanese government to raise the fuel surcharge on international passenger fares effective July 10, from 11,000 yen or $91 to 12,000 yen or $100. |

11

CLASS ACTION COMPLAINT

| August 15, 2007, Japan Airlines files a notice with the Japanese government to raise the fuel surcharge on international passenger fares effective October 1, from 12,000 yen or $100 to 13,000 yen or $108. | August 20, 2007, ANA files a notice with the Japanese government to raise the fuel surcharge on international passenger fares effective October 1, from 12,000 yen or $100 to 13,000 yen or $108. |
|---|---|

46.    Other defendants did likewise.  United Airlines, for example, charged a surcharge in line with Japan Airlines International and All Nippon Airways

## CARTEL-LIKE ORGANIZATIONS

47.    Defendants' executives, as well as other air carriers' executives, met formally or informally at various trade meetings such as meetings of the International Air Transport Association ("IATA"), the Association of Asia Pacific Airlines, oneworld, Star Alliance and SkyTeam Alliance.  At these meetings Defendants conspired to artificially inflate fuel surcharges on Trans-Pacific Passenger Air Transportation.

48.    One of the keys to the conspiracy is the 42 year old Association of Asia Pacific Airlines ("AAPA").  The 17 member trade association, based in Kuala Lumpur, Malaysia, is the most significant group representing Asia/Pacific carriers. The AAPA boasts that its "member airlines carry 285 million passengers and 10 million tonnes of cargo representing approximately one-fifth of global passenger traffic and one-third of global air cargo traffic respectively."  Ten of the Defendants are members of AAPA.

49.    The primary purpose of AAPA is to serve as a forum for members' views on issues of common interest and to foster close cooperation.  According to the organization, "AAPA speaks with a common voice on behalf of the Asia Pacific

12

CLASS ACTION COMPLAINT

1 carriers and puts forward Asian perspectives when dealing with governments, aircraft
2 manufacturers, airport authorities and other organizations on industry issues. The
3 activities of the Association cover every aspect of civil aviation where the airlines
4 feel they can work together for mutual benefit. In addition, AAPA retains access to
5 specialized legal and aviation consultants in Brussels and Washington, a reflection of
6 the significant impact which the profusion of U.S. and E.U. regulatory developments
7 have on all international carriers including Asia Pacific airlines."

8       50.    AAPA was formed during a meeting of Asian airline executives in 1965
9 to discuss regional cooperation. The following year, Philippine Airlines, China
10 Airlines, Korean Airlines and Malaysian Airlines officially formed the Orient
11 Airlines Research Bureau. The group evolved into the Orient Airlines Association
12 and in 1996 changed its name to Association of Asia Pacific Airlines.

13      51.    Another key to the conspiracy is the Geneva-based International Air
14 Transport Association. All of the defendants are members of the IATA, which was
15 founded in 1945 in Havana, Cuba. IATA represents more than 240 airlines
16 comprising 94% of scheduled international air traffic. It describes itself as "the prime
17 vehicle for inter-airline cooperation." It was an agreement reached at an IATA
18 meting in Geneva on May 28, 2004 that played a role in triggering the fuel Surcharge
19 conspiracy.

20      52.    Alliance memberships by airline:

21           Air New Zealand

22                • Member of the Association of Asia Pacific Airlines

23                • Member of the Star Alliance

24                • Member of the International Air Transport Association

25

26           All Nippon Airways

27                • Member of the Association of Asia Pacific Airlines

28

13

CLASS ACTION COMPLAINT

1          • Member of the Star Alliance

2          • Member of the International Air Transport Association

3

4     Cathay Pacific Airways

5          • Member of the Association of Asia Pacific Airlines

6          • Member of oneworld

7          • Member of the International Air Transport Association

8

9     China Airlines

10         • Member of the Association of Asia Pacific Airlines

11         • Member of the International Air Transport Association

12

13    EVA Airlines

14         • Member of the Association of Asia Pacific Airlines

15         • Member of the International Air Transport Association

16

17    Japan Airlines International

18         • Member of the Association of Asia Pacific Airlines

19         • Member of oneworld

20         • Member of the International Air Transport Association

21

22    Malaysia Airlines

23         • Member of the Association of Asia Pacific Airlines

24         • Member of the International Air Transport Association

25

26    Qantas Airways

27         • Member of the Association of Asia Pacific Association

28

14

CLASS ACTION COMPLAINT

1          •      Member of oneworld

2          •      Member of the International Air Transport Association

3

4          Singapore Airlines

5          •      Member of the Association of Asia Pacific Airlines

6          •      Member of the Star Alliance

7          •      Member of the International Air Transport Association

8

9          Thai Airways

10         •      Member of the Association of Asia Pacific Airlines

11         •      Member of the Star Alliance

12         •      Member of the International Air Transport Association

13

14         United Airlines

15         •      Member of the Star Alliance

16         •      Member of the International Air Transport Association

17                **CODE SHARING BUSINESS PARTNERSHIPS**

18         53.    In addition to the four different alliances/trade groups, various

19   defendants are in effect business partners with each other through what is called code

20   sharing. Code sharing is a business term which was first originated in 1990 when

21   Qantas Airways and American Airlines combined services between an array of U.S.

22   and Australian cities. Code sharing is a legal business arrangement. However, it

23   provides a mechanism to conduct illegal activity.

24         54.    A code share is part of a "cooperative services" agreement between the

25   two carriers. It refers to the practice where a flight operated by an airline is jointly

26   marketed as a flight for one or more other airlines. Most major airlines today have

27   code sharing partnerships with other airlines. "Code" refers to the identifier used in

28

15

CLASS ACTION COMPLAINT

1  flight schedule, generally the 2-character International Air Transport Association

2  airline designator code and flight number. For example, YY123, flight 123 operated

3  by the airline YY, could be sold by airline ZZ as ZZ456. It is a business partnership

4  that allows airlines to earn revenue by selling tickets on a partner's flight.

5      55.    Accordingly to the U.S. Department of Transportation and Defendants,

6  the following are among the code sharing partnerships of the defendants listed

7  alphabetically:

8                         Air New Zealand/EVA Airways

9                         Air New Zealand/Qantas (Tasman route)

10                        Air New Zealand/Japan Airlines International

11                        Air New Zealand/Northwest Airlines

12                        Air New Zealand/Singapore Airlines

13                        Air New Zealand/Thai Airways

14                        Air New Zealand/United Airlines

15                        All Nippon Airways/EVA Airways

16                        All Nippon Airways/Malaysia Airlines

17                        All Nippon Airways/Singapore Airlines

18                        All Nippon Airways/United Airlines

19                        Cathay Pacific Airways/Japan Airlines International

20                        China Airlines/Thai Airways

21                        EVA Airways/Air New Zealand

22                        EVA Airways/All Nippon Airways

23                        EVA Airways/Qantas

24                        Japan Airlines International/ Air New Zealand

25                        Japan Airlines International/ Cathay Pacific

26                        Japan Airlines International/ Northwest Airlines

27                        Japan Airlines International/ Qantas Airlines

28

16

CLASS ACTION COMPLAINT

1  Japan Airlines International/ Singapore Airlines

2  Japan Airlines International/ Thai Airways

3  Malaysia Airlines/All Nippon Airways

4  Malaysia Airlines/Thai Airways

5  Qantas Airways/Air New Zealand

6  Qantas Airways/EVA Airways

7  Qantas Airways/Japan Airlines International

8  Singapore Airlines/Air New Zealand

9  Singapore Airlines/All Nippon Airways

10  Singapore Airlines/Malaysian Airlines

11  Singapore Airlines/United Airlines

12  Thai Airways/China Airlines

13  Thai Airways/Japan Airlines International

14  Thai Airways/Malaysia Airlines

15  Thai Airways/United Airlines

16  United Airlines/Air New Zealand

17  United Airlines/All Nippon Airways

18  United Airlines/Singapore Airlines

19  United Airlines/Thai Airways

20  ## CARTEL ACTIVITY MEETINGS

21  56.    Over the years, executives of Defendant airlines have attended numerous

22  meetings where conspiratorial activity was accomplished. Here are a few examples of

23  meetings where executives discussed and agreed on fuel surcharges:

24  57.    **The International Air Transport Association, Special Meeting,**

25  **Geneva, May 28, 2004**. Fuel costs were the main topic of this meeting and there were

26  agreements on how to add surcharges for fuel. The Montreal Gazette reported on June

27  1, 2004, that "member carriers of the International Air Transport Association might

28

17

CLASS ACTION COMPLAINT

1  raise international fares by as much as five percent to help cover a surge in jet fuel
2  costs. The proposed fare increase of between two percent and five percent was agreed
3  at a May 28 meeting of the association, which represents more than 270 airlines
4  worldwide, an IATA spokesperson said."

5      58.  **The International Air Transport Association Annual General**
6  **Meeting and World Air Transport Summit, Singapore, June 6-8, 2004.** More than
7  600 airline executives attended this annual summit. Giovanni Bisignani, IATA CEO
8  said in a welcoming statement, "While record high fuel prices challenge our
9  profitability it is time to put our efforts toward rebuilding the industry." Immediately
10 following this meeting on June 8, 2004 both Japan Airlines International and All
11 Nippon Airways filed applications with the Japanese government to raise international
12 passenger fare because of high fuel costs. In a news release announcing the Fuel
13 Surcharge hike, Japan Airlines International said:

14              The application follows a special meeting of the members of the
15              International Air Transport Association in Geneva, May 28,
16              (2004) when a resolution was discussed to raise fares in the wake
17              of increased fuel prices. This resolution has now been adopted.

18      On June 8, 2004, Japan Airlines International and All Nippon Airways
19 announced that a five percent fuel surcharge would be go into effect July 1, 2004.

20      59.  **2005 International Flight Services Association, Global**
21 **LeadershipConference Asia Pacific, August 30-September 1, 2005 Tokyo Japan.**
22 This meeting was labeled as "The Challenge of Change." Among the participants
23 were, Makoto Fukada, Managing Director and Senior Vice President International
24 Passenger, Japan Airlines; Charles Grossrieder, a manager at Cathay Pacific Airways;
25 Nikom Raviyan, Vice President, Thai Airways; Shigeru Miyata, Vice President,
26 Japan Airlines; and Kriengsakdi Phatharacharukul, Director, Thai Airways.

27

28

18

CLASS ACTION COMPLAINT

1    60.    **2nd Annual Asia Pacific & Middle East Aviation Outlook Summit**

2    **2006, December 5-6, 2005 Kuala Lumpur, Malaysia.**  The theme of this meeting

3    was "Towards Best Practice; Maximising Revenues and Minimising Costs."  On the

4    first day of the meeting, the guests included Dato Seri Bashir Ahmad, Malaysia

5    Airport's CEO; Willy Boulter, Commerical Director for Virgin Atlantic Airways, and

6    Stanley Kuppusamy, President, International Relations, Singapore Airlines.  Fuel

7    surcharges were a topic of discussion.

8    61.    **Aviation Emergency Response 2006, AAPA sponsored, September**

9    **19-21, 2006 Bangkok, Thailand.**  This meeting was attended by international airport

10   officials and AAPA member executives.  Meetings were held on increasing revenues

11   in the transpacific area by way of Fuel Surcharges and other financial means.

12   62.    **3rd Annual Asia Pacific & Middle East Aviation Outlook Summit,**

13   **November 9-10, 2006 Singapore**.  Participating in this meeting were executives

14   from most of the Defendant airlines, including Geoff Dixon, CEO of Qantas and

15   Huang Cheng Eng, Executive VP for Singapore Airlines.  One of the issues presented

16   and discussed was "*Fighting Costs: Fuel prices and managing risk exposure.*"

17   63.    **AAPA Forum, November 28-29, 2006 Bandar Seri Begawan, Brunei**

18   **Darussalam.**  More than 120 aviation industry stakeholders attended this meeting,

19   organized by AAPA.  At this meeting, Defendants and others discussed surcharges.

20   64.    **Asia Pacific Aviation Summit, July 4-25, 2007 Sydney, Australia.**

21   This meeting was put on by the Asia Pacific aviation industry.  Some of the issues

22   discussed included the impact of the investigation by the U.S. Department of Justice

23   into fare price fixing.  Another topic was "working together efficiently" to diffuse the

24   investigation of added surcharges.

25                          **THE INVESTIGATION**

26   65.    The U.S. Department of Justice ("DOJ") started investigating air

27   passenger fuel surcharge conspiracies worldwide in 2006, particularly transatlantic

28

19

CLASS ACTION COMPLAINT

1    routes and transpacific routes to and from the West Coast.  The DOJ announced on

2    August 1, 2007 a $300 million settlement with British Airways and it cited passenger

3    transatlantic routes.  In its news release, the DOJ said:  "The Department also charged

4    that between August 2004 and February 2006, British Airways engaged in a

5    conspiracy to suppress and eliminate competition by fixing the Fuel Surcharge

6    charged to passengers on long-haul international flights, including flights between the

7    United States and the United Kingdom."

8         66.    The DOJ also focused on transpacific flights to and from the United

9    States, noting that investigation is "ongoing".

10        67.    In addition, several of the Defendants and unnamed co-conspirators have

11   been identified as targets and or subjects in international investigations by the U.S.

12   Department of Justice and the European Union into air cargo fuel surcharge price

13   fixing.  The targets, many of which are also named in civil suits, include Defendants

14   All Nippon Airways, Defendant Japan Airlines, Qantas Airways, and United Airlines.

15   In both the air passenger and cargo investigations, Defendants and other airlines are

16   accused of developing and participating in conspiracies to increase revenue by

17   assessing inflated Fuel Surcharges.

18                       **ADMISSIONS BY CO-CONSPIRATORS**

19        68.    On November 27, 2007 Qantas agreed to plead guilty and pay a $61

20   million fine for its role in a conspiracy to fix rates for international air cargo

21   shipments to and from the United States during the period January 2000 through

22   February 2006.  As part of its plea, Qantas admitted to participating in meetings,

23   conversations and communications in the United States and elsewhere to discuss the

24   cargo rates to be charged on certain Trans-Pacific routes to and from the United

25   States and agreed during those meetings, conversations, communications on the cargo

26   rates for certain transpacific routs to and from the U.S.

27

28

20

CLASS ACTION COMPLAINT

1      69.    On October 6, 2007, the Japanese daily newspaper *Asahi Shimbun*

2  reported that Japan Airlines International would book a roughly \$171 million charge

3  for potential fines from a global price fixing probe by U.S. and European Union

4  officials.

## VIOLATIONS ALLEGED

6      70.    During the Class Period Defendants engaged in a continuing agreement,

7  understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain,

8  and/or stabilize the prices of Trans-Pacific Passenger Air Transportation and fuel

9  surcharges in the United States and throughout the world in violation of Section 1 of

10  the Sherman Act, 15 U.S.C. § 1.

11      71.    In formulating and effectuating the alleged contract, combination, or

12  conspiracy, Defendants engaged in anti-competitive activities, the purpose and effect

13  of which were to artificially raise, fix, maintain, and/or stabilize the prices of Trans-

14  Pacific Passenger Air Transportation and fuel surcharges.  These activities included

15  the following:

16      a. agreeing to charge prices of Trans-Pacific Passenger Air Transportation

17          and fuel surcharges at certain levels and otherwise to fix, raise, maintain,

18          and/or stabilize the prices of Trans-Pacific Passenger Air Transportation

19          and fuel surcharges charged in the United States and throughout the

20          world;

21      b. charging Trans-Pacific Passenger Air Transportation and fuel surcharges

22          at the agreed-upon rates;

23      c. signaling increases in the price of Trans-Pacific Passenger Air

24          Transportation and fuel surcharges by, *inter alia*, publicly announcing

25          their increases;

26      d. moving prices of their Trans-Pacific Passenger Air Transportation and

27          fuel surcharges in lockstep; and

28

21

CLASS ACTION COMPLAINT

1     e. announcing new Trans-Pacific Passenger Air Transportation and fuel

2         surcharges prices nearly simultaneously or within days or each other.

3     72.    During the Class Period, the Defendants increased, as a ratio to external

4  costs and profits-the Passenger Air Transport and fuel surcharges they charged.

5  These increases in Passenger Air Transport and Fuel Surcharges cannot be explained

6  by actual increases in fuel prices or supply/demand forces, but rather were the result

7  of anticompetitive conduct.

8     73.    During the Class Period, Plaintiffs and members of the Class purchased

9  Passenger Air Transportation directly from Defendants (or their agents, subsidiaries,

10  and/or controlled affiliates).

11     74.    The illegal combination and conspiracy alleged herein has had the

12  following effects, among others:

13     a. Price competition in the pricing of Passenger Air Transportation and

14         Fuel Surcharges thereon has been restrained, suppressed, and/or

15         eliminated;

16     b. Price competition in the contracting of Passenger Air Transportation ahs

17         been restrained, suppressed, and/or eliminated;

18     c. Prices for Passenger Air Transportation and Fuel Surcharges thereon

19         charged by Defendants have been fixed, raised, maintained, and/or

20         stabilized at artificially high, non-competitive levels; and

21     d. Members of the Class have been deprived of the benefit of free and open

22         competition.

23                  **INJURY TO PLAINTIFFS AND THE CLASS**

24     75.    During the Class Period, plaintiff and the members of the Class, because

25  of Defendants' antitrust violations, paid fuel surcharges and other fees they would not

26  have paid absent such violations.

27

28

                                    22

CLASS ACTION COMPLAINT

1    76.    As a result, plaintiff and the members of the Class they seek to represent
2    have been injured and damaged in their business and property in an amount to be
3    determined according to proof.

4    77.    As a direct and proximate result of the illegal conspiracy, plaintiff and
5    the members of the Class have been injured and financially damaged in their
6    respective businesses and property, in that they have paid fuel surcharges and other
7    fees during the Class Period they would not have paid in the absence of the illegal
8    conspiracy.

9                            **PRAYER FOR RELIEF**

10    WHEREFORE, plaintiff prays that:

11    A.    The Court determine that this action may be maintained as a class action
12    under Rule 23(a) and (b) (3) of the Federal Rules of Civil Procedure;

13    B.    The Court adjudge and decree that the contract, combination and
14    conspiracy alleged herein is a *per se* unreasonable restraint of trade in violation of
15    Section 1 of the Sherman Act.

16    C.    Judgment be entered against Defendants, jointly and severally, and in
17    favor of plaintiff and the Class for damages as allowed by law as determined to have
18    been sustained by them;

19    D.    Each of the Defendants, successors, assigns, parents, subsidiaries,
20    affiliates, and transferees, and their respective officers, directors, agents and
21    employees, and other persons acting or claiming to act on behalf of Defendants or in
22    concert with them, be permanently enjoined and restrained from, in any manner,
23    directly or indirectly, continuing, maintaining or renewing the combinations,
24    conspiracy, agreement, understanding or concert of action, or adopting any practice,
25    plan, program or design having a similar purpose or effect in restraining competition;

26    E.    The Court award plaintiff and attorneys' fees and costs, and pre-
27    judgment and post-judgment interest as permitted by law; and

28

23

CLASS ACTION COMPLAINT

1    F.    The Court award plaintiff and the Class such other and further relief as

2  may be necessary and appropriate.

3                          **JURY TRIAL DEMAND**

4        Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by

5  jury of all of the claims asserted in this complaint so triable.

6

7  DATED:  March 14, 2008                KAPLAN FOX & KILSHEIMER LLP

8

9                                        Laurence D. King (SBN 206423)
                                         lking@kaplanfox.com
10                                       KAPLAN FOX & KILSHEIMER LLP
                                         350 Sansome Street, Ste 400
11                                       San Francisco, CA 94104
                                         Telephone:  415-772-4700
12                                       Facsimile:  415-772-4707

13
                                         Marc M. Seltzer
14                                       mseltzer@susmangodfrey.com
                                         Susman Godfrey L.L.P.
15                                       1901 Avenue of the Stars, Suite 950
                                         Los Angeles, CA 90067-6029
16                                       Telephone:  310-789-3100
                                         Facsimile: 310-789-3150
17
                                         Daniel J. Walker (WSBA 38876)
18                                       dwalker@susmangodfrey.com
                                         SUSMAN GODFREY L.L.P.
19                                       1201 Third Avenue, Suite 3800
                                         Seattle, WA 98101-3000
20                                       Telephone: 206-516-3880
                                         Facsimile: 206-516-3883
21

22                                       *Attorneys for Plaintiff*

23

24

25

26

27

28

                                    24
  CLASS ACTION COMPLAINT

JS 44 (Rev. 12/07) (cand rev 1-16-08)

E-filing

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

**I. (a) PLAINTIFFS**

BRUCE HUT, individually and on behalf of all others similarly situated,

**DEFENDANTS**

AIR NEW ZEALAND
[see attachment for additional defendants]

**(b)** County of Residence of First Listed Plaintiff    Hong Kong
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Laurence D. King
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104, Tel: (415) 772-4700

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1   U.S. Government
     Plaintiff

☒ 3   Federal Question
     (U.S. Government Not a Party)

☐ 2   U.S. Government
     Defendant

☐ 4   Diversity
     (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)           and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☒ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Med. Malpractice | ☐ 625 Drug Related Seizure |    28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |    Liability | ☐ 365 Personal Injury — |    of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
|    & Enforcement of Judgment |    Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent |    Corrupt Organizations |
| ☐ 152 Recovery of Defaulted |    Liability |    Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|    Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** |    Safety/Health | | ☐ 490 Cable/Sat TV |
|    (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment |    Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | |    Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle |    Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract |    Product Liability | ☐ 385 Property Damage |    Act | ☐ 862 Black Lung (923) |    12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury |    Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |    & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment |    Sentence | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** |    Security Act | |    Act |
| ☐ 240 Torts to Land |    Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | |    or Defendant) |    Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party |    Under Equal Access |
| |    Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application |    26 USC 7609 |    to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| |    Other | |    Alien Detainee | |    State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | |    Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original
   Proceeding

☐ 2 Removed from
   State Court

☐ 3 Remanded from
   Appellate Court

☐ 4 Reinstated or
   Reopened

☐ 5 Transferred from
   another district
   (specify)

☐ 6 Multidistrict
   Litigation

☐ 7 Appeal to District
   Judge from
   Magistrate
   Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Section 1 of Sherman Act, 15 U.S.C. § 1

Brief description of cause:
Antitrust/Anti-competitive activity to artifically inflate fuel surcharges

**VII. REQUESTED IN COMPLAINT:**

☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE". M:08-cv-01913-CRB, In Re: Transpacific Passenger Air Transportation Antitrust Lit

**IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)**
(PLACE AND "X" IN ONE BOX ONLY)

☐ SAN FRANCISCO/OAKLAND     ☐ SAN JOSE

DATE    3 / 14 / 08

SIGNATURE OF ATTORNEY OF RECORD

## ATTACHMENT TO CIVIL COVER SHEET

Additional Defendants:

ALL NIPPON AIRWAYS,

CATHAY PACIFIC AIRWAYS,

CHINA AIRLINES,

EVA AIRWAYS,

JAPAN AIRLINES INTERNATIONAL,

MALAYSIA AIRLINES,

QANTAS AIRWAYS LIMITED,

SINGAPORE AIRLINES,

THAI AIRWAYS, and

UNITED AIRLINES

DUPLICATE

Court Name: U.S. District Court, NDCA
Division: 3
Receipt Number: 34611017038
Cashier ID: bucklem
Transaction Date: 03/17/2008
Payer Name: wheels of justice
--------------------------------
CIVIL FILING FEE
 For: bruce hut
 Case/Party: D-CAN-3-08-CV-001462-001
 Amount:      $350.00
--------------------------------
CHECK
 Check/Money Order Num: 28899
 Amt Tendered:  $350.00
--------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:      $0.00

mej

Checks and drafts are accepted
subject to collections and full
credit will only be given when the
check or draft has been accepted by
the financial institution on which
it  was drawn.